RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA** P 12: 29
**NORTHERN DIVISION**

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| ROBERT HARVEY FULLER, and KA'TORIA GRAY, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO.:2:17-CV-96 |
| vs. | ) ) | |
| KOCH FOODS, INC.; KOCH FOODS OF ALABAMA, LLC; DAVID BIRCHFIELD; and MELISSA MCDICKINSON, | ) ) ) ) | PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY. |
| Defendants. | ) | |

## COMPLAINT

## JURISDICTION AND VENUE

1.   This is a suit to obtain relief for race discrimination and retaliation under 42 U.S.C. §1981.  The Plaintiffs seek to recover under Alabama tort law as well as the Racketeering Influenced and Corrupt Organizations Act.

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202.

3.   Venue is proper in that the alleged acts occurred in Montgomery County, Alabama.

## PARTIES

4.   Plaintiff Robert Harvey Fuller is an African-American, male resident of Montgomery County, Alabama who is over the age of 19.

5.   Plaintiff Ka'Toria Gray is an African-American, female resident of Montgomery County, Alabama who is over the age of 19.

6.   Defendant Koch Foods of Alabama LLC, ("Koch-Ala") is a corporation that owns and operates facilities at which it processes and packages chicken products ("Montgomery processing facilities") for sale and ultimately for consumption by the public, and does such business in Montgomery, Alabama.

7.   The Koch-Ala complex consists of a Debone Plant, Kill Plant, Hatchery and Shipping Facility.

8.   Defendant Koch Foods, Inc. is a corporation that owns and operates facilities at which it processes and packages chicken products at various locations around the country for sale and ultimately for consumption by the public and that also allows or licenses the use of the name of "Koch Foods" by similar businesses including Defendant Koch-Ala.

9.   During the time Plaintiffs worked at Defendant Koch-Ala's Montgomery facility, Defendant David Birchfield was the complex human resources manager for all of Koch Foods and Koch-Ala's Montgomery facilities.

10.  Defendant. Birchfield maintained an office at Koch-Ala's Kill Plant.

11. During the time Plaintiffs worked at Defendant Koch-Ala's Montgomery facility, Defendant Melissa McDickinson was the human resources manager for the Debone Plant owned and operated by Koch Foods and Koch-Ala.

12. The Debone Plant at Koch-Ala is across the street from the Kill Plant.

13. Defendant McDickson worked under the direct supervision of Defendant Birchfield.

14. Defendant Birchfield worked under the direct supervision of Bobby Elrod.

15. Bobby Elrod is employed by Koch Foods.

16. Bobby Elrod is the Director of Human Resources for Koch Foods.

## ADMINISTRATIVE REMEDIES

17. On October 9, 2015, Mr. Fuller filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that during the time he worked for Defendants he experienced unlawful discrimination based on his race, color and gender in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and experienced unlawful retaliation in violation of Title VII.

18. The EEOC has not yet issued a notice of right to sue to Mr. Fuller.

19. Mr. Fuller intends on amending this action to include his claims for violation of Title VII after receipt of his notice of right to sue.

20. On April 18, 2016, Ms. Gray filed a Charge of Discrimination with the United

3

States Equal Employment Opportunity Commission ("EEOC") alleging that during the time she worked for Defendants she experienced unlawful discrimination based on her gender in violation of Title VII and experienced unlawful retaliation in violation of Title VII.

21. On November 7, 2016, Ms. Gray filed a second Charge of Discrimination with the EEOC. She alleged she had experienced retaliation from filing her first Charge of Discrimination.

22. The EEOC has not yet issued a notice of right to sue to Ms. Gray for either of her Charges of Discrimination.

23. Ms. Gray intends on amending this action to include her claims for violation of Title VII after receipt of her notice of right to sue.

## STATEMENT OF THE FACTS

24. On or about January 24, 2011, Ms. Gray began working as a Licensed Practical Nurse at the Koch-Ala Montgomery location.

25. Ms. Gray later became a Registered Nurse and worked in that capacity at the Koch-Ala Montgomery location.

26. Ms. Gray's place of work was the Debone facility at Koch-Ala.

27. Through most of 2015, Ms. Gray reported to Frank Shelly.

28. Mr. Shelly worked for Koch Foods in Cumming, Georgia.

29. Throughout her employment, Ms. Gray worked with Betty Stabler, safety

supervisor.

30. Ms. Stabler is white.

31. Ms. Stabler treated Ms. Gray negatively because of Ms. Gray's race.

32. Ms. Stabler made racist remarks.

33. In early 2015, Onin Staffing placed Mr. Fuller in an HR Clerk position at Koch-Ala's Debone Facility.

34. Melissa McDickinson interviewed Mr. Fuller.

35. Ms. McDickinson's interview of Mr. Fuller was brief.

36. Mr. Fuller worked under the supervision of Melissa McDickinson.

37. The bulk of Mr. Fuller's responsibilities revolved around recruitment, orientation and training.

38. Approximately a month after being placed at Koch-Ala through Onin Staffing, Koch-Ala hired Mr. Fuller to work directly for the company.

39. Ms. McDiciknson flirted with Mr. Fuller.

40. Ms. McDickinson tried to kiss Mr. Fuller.

41. Ms. McDickinson brushed her breasts and knees against Mr. Fuller when he sat at the computer.

42. Ms. McDickinson found excuses to touch Mr. Fuller's chest, brush his shoulders and fix his tie.

43. Ms. McDickinson made inquiries to Mr. Fuller about his sex life.

44.  Ms. McDickinson approached Mr. Fuller with requests for sex and sexual favors.

45.  Ms. McDickinson requested Mr. Fuller leave his family to "get with someone who is going places" and implied that Mr. Fuller complying with her requests would improve his employment situation.

46.  Ms. McDickinson said to Mr. Fuller that he needed to get with the program and get with her ways.

47.  Mr. Fuller inferred Ms. McDickinson was demanding he engage in a relationship with her to ensure the security of his job.

48.  Ms. McDickinson called Mr. Fuller when he was at home.

49.  Mr. Fuller heard from one or more coworkers that Ms. McDickinson had said she wanted him to be her "work n*****" and wanted his "big black dick."

50.  Mr. Fuller heard Ms. McDickinson had used her position to compel sexual relationships with other African-American employees.

51.  Ms. McDickinson's conduct toward Mr. Fuller made him uncomfortable.

52.  Mr. Fuller refused Ms. McDickinson's advances.

53.  Upon information and belief, plant manager Randy Davenport wrote to Bobby Elrod complaining about Ms. McDickinson pursuing sexual contact with employees.

54.  Mr. Fuller was afraid to complain to David Birchfield about Ms.

6

McDickinsons' sexually aggressive conduct toward him because he had heard

Mr. Birchfield and Ms. McDickinson were in a sexual relationship.

55.   On several occasions, Mr. Fuller observed and heard of African-American

employees being treated disrespectfully and adversely by a white supervisor

named Bobby Partain.

56.   Mr. Fuller heard other supervisors mention Mr. Partain had verbally accosted

African-American employees and that the African-American employees were

then disciplined or dismissed.

57.   Concerned there was a problem with Mr. Partain discriminating against

African-American employees, Mr. Fuller voiced his opposition to Mr.

Partain's conduct to Mr. Birchfield and Ms. McDickinson.

58.   Mr. Fuller observed that Defendant Koch-Ala favored considering Hispanic

and/or undocumented workers for employment.

59.   Mr. Fuller observed eligible African-American candidates disqualified from

the hiring process without explanation despite having complete applications

and work history.

60.   Mr. Fuller observed Hispanic applicants with incomplete applications,

questionable identification, missing work history, and missing phone numbers

being interviewed and hired.

61.   Mr. Fuller voiced concerned that some of the Hispanic workers would not be

legally eligible for employment.

62.   Mr. Fuller overheard supervisors complaining about the hiring of black employees and expressing a preference for Hispanic workers.

63.   In May 2015, plant manager Randy Davenport reviewed applicants' applications with Mr. Fuller.

64.   Mr. Davenport's race is white.

65.   Mr. Davenport pulled and passed on for consideration by the night time manager applications from workers with names that appeared to be Hispanic.

66.   Mr. Fuller objected to Mr. Davenport that it appeared he was passing over the applicants with names more commonly associated with African-Americans in favor of Hispanics.

67.   Mr. Davenport smiled and winked at Mr. Fuller.

68.   Mr. Fuller took his complaint to both Ms. McDickinson and Mr. Birchfield.

69.   On or about May 18, 2015, Mr. Fuller emailed a complaint to Ms. McDickinson and Mr. Birchfield about Bobby Partain's treatment of an African-American employee, Elvin Mitchell.

70.   The next day, Ms. McDickinson questioned Mr. Fuller about his judgment in sending the email, telling him it was too easy to track.

71.   Female employees of races different than Mr. Fuller's who worked in human resources left Koch-Ala's facilities for lunch and were not terminated.

72.   Mr. Fuller could leave Koch-Ala's facility for lunch.

73.   Mr. Fuller's time allotted for lunch was an hour.

74.   On May 22, 2015, Mr. Fuller used his hour for lunch to attend his son's elementary school graduation.

75.   Mr. Fuller left Koch-Ala's premises with the permission and knowledge of Ms. McDickinson.

76.   When Mr. Fuller attempted to return to work, he was not allowed to do so.

77.   The persons staffing the guard shack at Koch-Ala would not allow Mr. Fuller to enter the premises, gave him Ms. McDickinson's cell phone number, and told him he could not return until notified.

78.   Mr. Fuller attempted calling Ms. McDickinson several times.

79.   Ms. McDickinson did not accept nor return Mr. Fuller's calls.

80.   On May 25, 2015, Mr. Fuller emailed Kathy Denton in the Human Resources Department.

81.   Concerned that he had not been contacted by Ms. McDickinson or Mr. Birchfield, Mr. Fuller expressed to Ms. Denton he was not being allowed to return to work and had not received any word about his status.

82.   On May 29, 2015, Mr. Fuller learned his employment at Koch-Ala had been terminated.

83.   The reason given to Mr. Fuller for his termination was job abandonment.

9

84.   Mr. Fuller complained to Bobby Elrod about his termination.

85.   Mr. Elrod did not take any action.

86.   On October 9, 2015, Mr. Fuller filed a Charge of Discrimination with the EEOC alleging race discrimination, sexual harassment and retaliation.

87.   On or about October 28, 2015, an employee in Human Resources named Alycia Hughes complained to Julia Bruno in an email that Melissa McDickinson was not at the facility most of the day, left at random hours, and left before 5:00 p.m.

88.   Ms. Hughes complained that at times Ms. McDickinson did not come to work and left the human resources clerks without an idea as to where she was or when she would be in.

89.   Ms. Hughes complained Ms. McDickinson's conduct was interfering with human resources ability to do their job.

90.   Ms. McDickinson was not terminated for this conduct.

91.   Prior to Mr. Fuller's termination, Mitzi James, a white employee in Human Resources, left work without permission, leaving the human resources department unattended.

92.   Mr. Birchfield did not terminate Ms. James.

93.   Mr. Birchfield suspended Ms. James.

94.   Ms. James' race is white.

10

95. In the fall of 2015, Ms. McDickinson expressed to Stevan Jackson, a union representative working at Koch-Ala, she was sexually attracted to Ka'Toria Gray.

96. Ms. McDickinson told Mr. Jackson she wanted to have sex with Ms. Gray.

97. By November 1, 2015, Koch Foods and/or Koch-Ala had notice of Mr. Fuller's EEOC Charge alleging sexually harassing conduct by Melissa McDickinson.

98. On or around November 14, 2015, Ms. McDickinson and Mr. Birchfield invited Ka'Toria Gray to the house where they lived.

99. Ms. McDickinson communicated to Ms. Gray that Mr. Birchfield wanted to talk to her about some things regarding work.

100. Ms. Gray responded that it was late and she would see them at work on Monday.

101. Ms. McDickinson insisted Ms. Gray come to their home.

102. When Ms. Gray arrived, Mr. Birchfield asked her if he could trust her.

103. Mr. Birchfield then discussed his intentions with respect to the employment future of another employee.

104. Ms. Gray took a seat.

105. Ms. McDickinson sat next to Ms. Gray and rubbed Ms. Gray on the leg and tried to kiss her.

11

106.  Ms. McDickinson told Ms. Gray she thought she was hot.

107.  Ms. McDickinson told Ms. Gray she wanted to kiss her.

108.  Mr. Birchfield looked at Ms. Gray and again asked if he could trust her.

109.  Ms. McDickinson grabbed Ms. Gray's hand and touched Ms. McDickinson's breast with it.

110.  Ms. McDickinson asked Ms. Gray if her breast felt real.

111.  Ms. Gray removed her hand.

112.  Ms. McDickinson asked Ms. Gray to dance with her.

113.  Ms. McDickinson pulled Ms. Gray to her feet.

114.  Ms. Gray declined to dance.

115.  While Ms. McDickinson stood in front of Ms. Gray, Mr. Birchfield approached her and stood behind her.

116.  Mr. Birchfield kissed Ms. Gray's neck.

117.  Ms. McDickinson kissed Ms. Gray.

118.  Ms. McDickinson's and Mr. Birchfield's conduct upset Ms. Gray.

119.  Ms. Gray stepped away.

120.  Ms. McDickinson and Mr. Birchfield propositioned Ms. Gray to have sex with them.

121.  Ms. Gray declined.

122.  Ms. Gray told them she was not interested in a sexual relationship with them.

12

123.   Ms. McDickinson said she thought Ms. Gray was bisexual.

124.   Ms. Gray responded she was not.

125.   Ms. McDickinson said that Mr. Birchfield could watch her have sex with Ms. Gray.

126.   Ms. Gray declined.

127.   Ms. McDickinson pulled Mr. Birchfield's penis out of his pants.

128.   Ms. McDickinson performed oral sex on Mr. Birchfield in front of Ms. Gray.

129.   Ms. McDickinson's and Mr. Birchfield's actions upset Ms. Gray.

130.   Ms. Gray fled to the restroom.

131.   Ms. Gray had heard rumors that Ms. McDickinson had pursued other employees sexually.

132.   Ms. Gray knew Ms. McDickinson had an ongoing sexual relationship with Mr. Birchfield.

133.   There was no higher ranking human resources employee at Koch-Ala than Mr. Birchfield.

134.   Ms. Gray left the restroom and went to her car.

135.   Ms. McDickinson followed Ms. Gray to her car and asked her to spend the night.

136.   Mr. Birchfield was standing at the door to the house in his underwear and t-shirt.

137. Mr. Birchfield asked Ms. Gray to spend the night.

138. Ms. Gray declined.

139. Ms. Gray got in her car and returned home.

140. The following Monday at work, Ms. Gray shared with several coworkers and a supervisor what had happened.

141. Ms. Gray told them she did not want to be in her office in the basement alone.

142. Because Ms. McDickinson and Mr. Birchfield were the highest ranking human resources employees at the plant, Ms. Gray did not feel she could complain to them about the conduct she experienced.

143. Ms. Gray did not feel she could complain to Bobby Elrod because she believed he was already aware of their conduct based on comments which had been made during a training session conducted by an attorney.

144. Ms. McDickinson continued to pursue Ms. Gray over the next few months.

145. Ms. McDickinson called Ms. Gray into her office.

146. When Ms. Gray arrived to Ms. McDickinson's office, Ms. McDickinson's shirt was unbuttoned revealing her chest to the point that it made Ms. Gray uncomfortable.

147. Ms. McDickinson texted Ms. Gray to see what she was doing after work.

148. Ms. McDickinson texted Ms. Gray to come to her house.

149. Ms. McDickinson had at least one other employee ask Ms. Gray to come to

14

the house where Ms. McDickinson was living with Mr. Birchfield.

150.   On or about March 14, 2016, Ms. Gray complained to Ms. McDickinson and saidthat she felt she was experiencing discrimination and harassment from white safety employees.

151.   On or about March 21, 2016, McDickinson and Mr. Birchfield took Ms. Gray to lunch at La Zona Rosa to discuss Ms. Gray's complaint about the white safety employees.

152.   Ms. McDickinson and Mr. Birchfield told Ms. Gray that she would no longer directly report to Safety Manger Frank Shelly.

153.   Mr. Birchfield told Ms. Gray she would report directly to Ms. McDickinson and him.

154.   Ms. Gray was concerned the chain in supervision was an effort to force her into a sexual relationship with Ms. McDickinson and Mr. Birchfield.

155.   In March 2016, Ms. Gray heard that Irish Jenkins, a male employee, had been terminated by Mr. Birchfield because he would not allow Mr. Birchfield watch Mr. Jenkins have sex with Ms. McDickinson.

156.   Mr. Jenkins shared with Ms. Gray that Ms. McDickinson and Mr. Birchfield had asked him to approach Ms. Gray about having group sex with them.

157.   Following his termination, Mr. Jenkins complained to Bobby Elrod about Ms. McDickinson and Mr. Birchfield pressuring employees into sexual

relationships.

158. Mr. Jenkins allowed Mr. Elrod to hear a recording he had made of Mr. Birchfield.

159. Mr. Elrod told Mr. Jenkins he had heard complaints like his before.

160. Ms. McDickinson and Mr. Birchfield began to scrutinize Ms. Gray to find a way to discipline her.

161. Ms. McDickinson and Mr. Birchfield were looking for a way to discipline Ms. Gray for refusing their previous sexual advances and/or for her complaints of race discrimination.

162. On April 14, 2016, Ms. McDickinson issued a disciplinary action to Ms. Gray for alleged attendance issues but refused to give Ms. Gray a copy of the disciplinary action.

163. Ms. Gray requested a three (3) day leave of absence.

164. On or about April 16, 2016, Ms. McDickinson attempted to contact Ms. Gray.

165. On April 18, 2016, Ms. Gray filed a Charge of Discrimination with the EEOC.

166. On April 19, 2016, Stevan Jackson, a union steward, approached Ms. Gray and said Ms. McDickinson and Mr. Birchfield wanted to know if she wanted to go to Florida with them.

167. Ms. Gray responded by saying, "No."

168. That evening, Ms. Gray requested an administration handbook from human

resources since she had not received one.

169. Laura Cortez in human resources told Ms. Gray she did not have one, but she would get Ms. Dickinson to write hre up something.

170. On April 21, 2016 after 8:00 pm, Mr. Birchfield sent Ms. Gray a message from his iPhone to her work email regarding the location of a new time clock.

171. Ms. Gray was not given 24-hours notice.

172. Because the email was sent at a late hour, Ms. Gray did not see the email until April 22, 2016.

173. Ms. Gray felt Mr. Birchfield sent the message at a late hour so that she would be late clocking in.

174. When Ms. Gray attempted to clock in on April 22, 2016, she was unable to do so.

175. Ms. Gray had been locked out of the office.

176. She asked Mr. Birchfield why she couldn't clock in.

177. Mr. Birchfield responded it was because she was no longer supposed to clock in there and she should have checked her email.

178. Ms. Gray had to run to the location of the new time clock to clock in at a time to avoid being tardy.

179. Ms. Gray resigned her employment with Koch Foods and Koch-Ala.

180. Ms. Gray resigned because she was uncomfortable reporting to Ms.

McDickinson and Mr. Birchfield.

181. Ms. Gray felt complaining to Bobby Elrod would be ineffective because she had heard other employees had complained to him about Ms. McDickinson and Mr. Birchfield pursuing employees sexually, and he had not done anything to stop their behavior.

182. After Ms. Gray filed her Charge of Discrimination, Koch Foods and/or Koch – Ala filed at least two complaints against Ms. Gray's nursing license with the Alabama Board of Nursing.

183. The complaints to the Board of Nursing were based on false allegations.

184. The complaints were intended to retaliate against and discredit Ms. Gray.

185. After Ms. Gray filed her Charge of Discrimination, it is believed Ms. Dickinson and Mr. Birchfield continued to pursue employees at Koch-Ala for sexual encounters.

COUNT I
INVASION OF PRIVACY
(Harvey Fuller)

186. Plaintiff Harvey Fuller adopts and incorporates the facts set out above in support of this count.

187. Defendants McDickinson, Koch Foods and Koch-Ala invaded Mr. Fuller's privacy by subjecting him to offensive and unwanted sexual overtures and making inquiries into his sex life.

188.  Defendants' conduct offended and embarrassed Mr. Fuller.

189.  Defendant McDickinson's actions toward Mr. Fuller were taken while she was acting in her role as his supervisor.

190.  Defendants Koch Foods and Koch-Ala ratified and permitted Defendant McDickinson's conduct.

191.  Defendants Koch Foods and Koch-Ala are liable for the conduct of Defendant McDickinson.

192.  Defendants injured Mr. Fuller.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff Harvey Fuller respectfully requests the entry of a judgment against Defendants McDickinson, Koch Foods and Koch-Ala pursuant to an order awarding:

a.    Compensatory damages to be determined by the trier of fact;

b.    Punitive damages to be determined by the trier of fact;

c.    Injunctive relief;

d.    That relief which is fair, just and equitable under the circumstances of the case; and

e.    The costs of this suit.

## COUNT II
## INVASION OF PRIVACY
### (Ka'Toria Gray)

193.  Plaintiff Ka'Toria Gray adopts and incorporates the facts set out above in

support of this count.

194.   Defendants Birchfield, McDickinson, Koch Foods and Koch-Ala invaded Mr.
       Gray's privacy by subjecting her to offensive and unwanted sexual overtures
       and making inquiries into her sex life.

195.   Defendants' conduct offended and embarrassed Ms. Gray.

196.   Defendants' McDickinson's and Birchfield's actions toward Ms. Gray were
       taken while they were acting in their roles as human resources professionals
       and supervisors.

197.   Defendants Koch Foods and Koch-Ala ratified and permitted Defendant
       McDickinson's conduct.

198.   Defendants Koch Foods and Koch-Ala ratified and permitted Defendant
       Birchfield's conduct.

199.   Defendants Koch Foods and Koch-Ala are liable for the conduct of
       Defendants McDickinson and Birchfield.

200.   Defendants injured Ms. Gray.

       WHEREFORE, PREMISES CONSIDERED, the Plaintiff Ka'Toria Gray
respectfully requests the entry of a judgment against Defendants McDickinson,
Birchfield, Koch Foods and Koch-Ala pursuant to an order awarding:

       a.     Compensatory damages to be determined by the trier of fact;

       b.     Punitive damages to be determined by the trier of fact;

c.  Injunctive relief;

d.  That relief which is fair, just and equitable under the circumstances of the case; and

e.  The costs of this suit.

<u>COUNT III</u>
<u>ASSAULT AND BATTERY</u>
(Ka'Toria Gray)

201.  Plaintiff Ka'Toria Gray adopts and incorporates the facts set out above in support of this count.

202.  Defendants Birchfield, McDickinson, Koch Foods and Koch-Ala subjected Ms. Gray to the threat of offensive and unwanted touching.

203.  Defendants Birchfield, McDickinson, Koch Foods and Koch-Ala subjected Ms. Gray to offensive and unwanted touching.

204.  Defendants' conduct offended and embarrassed Ms. Gray.

205.  Defendants' McDickinson's and Birchfield's actions toward Ms. Gray were taken while they were acting in their roles as human resources professionals and supervisors.

206.  Defendants Koch Foods and Koch-Ala ratified and permitted Defendant McDickinson's conduct.

207.  Defendants Koch Foods and Koch-Ala ratified and permitted Defendant Birchfield's conduct.

208.  Defendants Koch Foods and Koch-Ala are liable for the conduct of Defendants McDickinson and Birchfield.

209.  Defendants injured Ms. Gray.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff Ka'Toria Gray respectfully requests the entry of a judgment against Defendants McDickinson, Birchfield, Koch Foods and Koch-Ala pursuant to an order awarding:

a.    Compensatory damages to be determined by the trier of fact;

b.    Punitive damages to be determined by the trier of fact;

c.    Injunctive relief;

d.    That relief which is fair, just and equitable under the circumstances of the case; and

e.    The costs of this suit.

COUNT IV
ASSAULT AND BATTERY
(Harvey Fuller)

210.  Plaintiff Harvey Fuller adopts and incorporates the facts set out above in support of this count.

211.  Defendants McDickinson, Koch Foods and Koch-Ala subjected Mr. Fuller to the threat of offensive and unwanted touching.

212.  Defendants McDickinson, Koch Foods and Koch-Ala subjected Mr. Fuller to offensive and unwanted touching.

213. Defendants' conduct offended and embarrassed Mr. Fuller.

214. Defendant McDickinson's actions toward Mr. Fuller were taken while she was acting in her role as Mr. Fuller's supervisor.

215. Defendants Koch Foods and Koch-Ala ratified and permitted Defendant McDickinson's conduct.

216. Defendants Koch Foods and Koch-Ala are liable for the conduct of Defendant McDickinson.

217. Defendants injured Mr. Fuller.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff Harvey Fuller respectfully requests the entry of a judgment against Defendants McDickinson, Koch Foods and Koch-Ala pursuant to an order awarding:

   a. Compensatory damages to be determined by the trier of fact;

   b. Punitive damages to be determined by the trier of fact;

   c. Injunctive relief;

   d. That relief which is fair, just and equitable under the circumstances of the case; and

   e. The costs of this suit.

## COUNT V
## OUTRAGE
(Ka'Toria Gray)

218. Plaintiff Gray adopts and incorporates the facts set out above in support of

23

this count.

219. Defendants Birchfield, McDickinson, Koch-Ala and Koch Foods acted intentionally to inflict emotional distress on Ms. Gray.

220. Defendants Birchfield's and McDickinson's actions toward Ms. Gray were taken while they were acting in their role as human resources professionals.

221. Defendants Koch Foods and Koch-Ala ratified and permitted Defendants Birchfield's and McDickinson's conduct.

222. Defendants Koch-Ala and Koch Foods are liable for the conduct of Defendants Birchfield and McDickinson.

223. Defendants injured Ms. Gray.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Ka'Toria Gray requests the entry of a judgment against Defendants Birchfield, McDickinson, Koch-Ala and Koch Foods pursuant to an order awarding:

a.   Compensatory damages to be determined by the trier of fact;

b.   Punitive damages to be determined by the trier of fact;

c.   Injunctive relief;

d.   That relief which is fair, just and equitable under the circumstances of the case; and

e.   The costs of this suit

### COUNT VI
### OUTRAGE

24

(Harvey Fuller)

224.  Plaintiff Fuller adopts and incorporates the facts set out above in support of this count.

225.  Defendants McDickinson, Koch-Ala and Koch Foods acted intentionally to inflict emotional distress on Ms. Gray.

226.  Defendant McDickinson's actions toward Mr. Fuller were taken while she were acting in her role as a human resources professional.

227.  Defendants Koch Foods and Koch-Ala ratified and permitted Defendant McDickinson's conduct.

228.  Defendants Koch-Ala and Koch Foods are liable for the conduct of Defendant McDickinson.

229.  Defendants injured Mr. Fuller.

WHEREFORE, PREMISES CONSIDERED, Plaintiff HarveyFuller requests the entry of a judgment against Defendants McDickinson, Koch-Ala and Koch Foods pursuant to an order awarding:

a.  Compensatory damages to be determined by the trier of fact;

b.  Punitive damages to be determined by the trier of fact;

c.  Injunctive relief;

d.  That relief which is fair, just and equitable under the circumstances of the case; and

e.     The costs of this suit

## COUNT VII
## NEGLIGENT/WANTON SUPERVISION, TRAINING, AND RETENTION
(Harvey Fuller and Ka'Toria Gray)

230.  Plaintiffs adopt and reallege the paragraphs above as if fully set forth in full herein.

231.  Defendant Koch-Ala had a duty to provide a reasonably safe, non-hostile and non-discriminatory work environment to its employees, including Plaintiffs.

232.  Defendant Koch Foods had a duty to provide a reasonably safe, non-hostile and non-discriminatory work environment to its employees, including Plaintiffs.

233.  Defendant Koch Foods knew, or should have known, of the conduct of Defendant Birchfield.

234.  Defendant Koch Foods knew, or should have known, of the conduct of Defendant McDickinson.

235.  Defendant Koch-Ala knew, or should have known, of the conduct of Defendant Birchfield.

236.  Defendant Koch-Ala knew, or should have known, of the conduct of Defendant McDickinson.

237.  Defendants Koch Foods negligently supervised, trained and/or retained Defendants Birchfield and McDickinson.

238. Defendants Koch Foods-Ala negligently supervised, trained and/or retained Defendants Birchfield and McDickinson.

239. Defendants Koch Foods and Koch-Ala maliciously, deliberately, wantonly and/or negligently retained employees who engaged in tortious and/or illegal conduct, including, but not limited to, Defendants Birchfield and McDickinson.

240. Defendants Koch Foods and Koch-Ala failed to protect employees, such as Plaintiffs, from the tortious treatment described in this Complaint.

241. As a result of the inaction by Defendants Koch Foods and Koch-Ala, Plaintiffs were injured.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully requests the entry of a judgment against Defendants Koch Foods and Koch-Ala pursuant to an order awarding:

a.  Compensatory damages to be determined by the trier of fact;

b.  Punitive damages to be determined by the trier of fact;

c.  Injunctive relief;

d.  That relief which is fair, just and equitable under the circumstances of the case; and

e.  The costs of this suit

### COUNT VIII
### 42 U.S.C. §1981

## RETALIATION FOR COMPLAINTS RACE DISCRIMINATION
### (Harvey Fuller and Ka'Toria Gray)

242. This is a claim against Defendants Koch Foods and Koch-Ala arising under 42 U.S.C. §1981 for taking adverse actions against Plaintiffs for making complaints of race discrimination.

243. Plaintiffs adopt and incorporate by reference the factual allegations set forth above.

244. Plaintiffs complained to Defendants of actions they believe in good faith to be racially discriminatory.

245. After Harvey Fuller complained to Defendants of actions he believed to be racially discriminatory, Defendants terminated his employment.

246. Defendants told Mr. Fuller they were terminating him due to job abandonment.

247. Mr. Fuller did not abandon his job.

248. Within days of complaining of discrimination to David Birchfield and Melissa McDickinson, Ka'Toria Gray received a disciplinary action initiated and authorized by David Birchfield and/or Melissa McDickinson.

249. The disciplinary action would dissuade a reasonable person from engaging in protected activity.

250. Defendants Koch Foods and Koch-Ala retaliated against Plaintiffs for complaining of race discrimination.

28

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request entry of judgment under 42 U.S.C. §1981, against Defendants Koch Foods and Koch-Ala pursuant to an Order awarding:

    a.    compensatory damages to be determined by the trier of fact;

    b.    punitive damages to be determined by the trier of fact;

    c.    nominal damages to be determined by the trier of fact;

    d.    injunctive relief, including backpay and pre-judgment interest;

    e.    that relief which is fair, just, and equitable under the circumstances of this case;

    f.    reasonable attorney's fees; and

    g.    the costs of this suit

## COUNT IX
## THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
## VIOLATIONS OF 8 U.S.C. 1324(a)(1)(A)(iii)
(Harvey Fuller)

251.   Plaintiffs adopt and reallege the paragraphs above as if fully set forth in full herein.

252.   Defendants Koch Foods, Koch-Ala and Birchfield engaged in an enterprise that engaged in a pattern of racketeering conduct described more specifically below.

253.   Defendants Koch Foods, Koch-Ala and Birchfield are, and have been for

years, active participants in an ongoing "enterprise," within the meaning of that word as it is used in RICO, 18 U.S.C. § 1961(4), in the form of running, managing and operating chicken processing facilities as business operations with common purposes of (a) for financial gain by reducing labor costs of their business' operations and enterprise, (b) for financial gain by generating revenues and making money and profits in their business' operations and enterprise, (c) promoting their business' operations and "enterprise," the brand name of 'Koch Foods", and the products sold and services Koch and Koch-Ala provide to customers of their business' operations and enterprise.

254. The business operations run, managed and operated by Defendants, and their enterprise, has been for many years an ongoing operation, and absent this Court's intervention, will probably and likely continue to operate, as a racketeering "enterprise" unlawful under RICO for the common purposes described above.

255. Each Defendant participates in the management of the "enterprise" described above, including the operations of the "Montgomery processing facilities."

256. Defendants Koch Foods and Koch-Ala spend some of the money and profits they earn and receive from their promoting the brand name of "Koch Foods", and from the sales of chicken products sold and services performed by Koch and Koch-Ala for customers of their chicken processing facilities for the

benefit of Defendants Koch, Koch-Ala and Birchfield, to which Koch-Ala pays a salary to manage the "Montgomery processing facilities" part of the unlawful enterprise.

257. In the enterprise, and particularly in the enterprise's "Montgomery processing facilities" Defendant Koch-Ala:

a.   hired and employed employees known to be undocumented workers and not authorized to work in this Country (hereafter called "undocumented workers"),

b.   hired and allowed undocumented workers as employees and allowed them to remain employed despite the facts that

i.   they were known by Koch-Ala's supervisors and management to be undocumented workers,

ii.   they did not produced and could not produce valid documents demonstrating their true identities and eligibility to work in this Country, and

c.   contacted third parties to supply it more individuals for employment, knowing that, or in reckless disregard of whether, the individuals so supplied and employed were illegal and ineligible to work or even be in this Country, and

d.       allowed undocumented workers to work, clock-in, be on Koch-Ala's payroll, have jobs and earn income under names and Social Security ("SS") numbers, that were not theirs to use, which they were nonetheless knowingly allowed to use.

258.   Defendant Koch-Ala knowingly accepted false and counterfeit documents presented by undocumented workers falsely trying to establish their eligibility to work in this Country when they were not eligible to do so.

259.   Defendant Koch-Ala knowingly signed and approved I-9 forms for undocumented workers (based on false and counterfeit documents they presented) who were not eligible to work or even be in this Country

260.   Under a regulation of the U. S. Department of Homeland Security, an employee has only "three business days of the hire" to present the necessary papers for completion of his/her I-9 form. 8 C.F.R. § 274a.2 (b)(1)(ii) (emphasis added).

261.   Defendants have a years-long pattern and practice and regularly have done business in an "enterprise" that does not comply with 8 C.F.R. § 274a.2(b)(1)(ii), and that does not follow-up to make sure undocumented workers present and have presented the necessary papers for completion or timely completion of his/her I-9 form and to establish his/her eligibility to work in the United States.

262.  Instead, Defendants and their "enterprise" have for years engaged in the patterns of unlawful racketeering practices described herein.

263.  In 2010, Defendant Koch paid fines totaling more than $536,000 arising from its Fairfield, Ohio's chicken processing facilities and Koch's failure to retain and check proof of employees' legal immigration status and eligibility to work in this Country.

264.  In 2011, Defendants were sued by two former employees for civil RICO violations in this court relating to their knowingly pursuing and hiring of undocumented workers.

265.  At times during his employment with Koch-Ala, Plaintiff Fuller had to, and did, fulfill human resources duties that included checking whether applicants for employment with Defendant Koch-Ala at the "Montgomery processing facilities" produced documents sufficient to establish their eligibility for work in this Country.

266.  In fulfilling his duties described in the immediately preceding paragraph, Plaintiff, when appropriate, expressed the opinion that it would be proper to reject applicants for employment because the applicants could not provide, or timely provide, documents sufficient to establish their eligibility for employment in this Country or because the documents they provided appeared to be false and counterfeit, under circumstances Plaintiff believed employing

33

them would be knowingly employing undocumented workers or in reckless disregard of the fact that they were undocumented workers, only to later learn Defendant Koch-Ala's supervisors and management employed those same applicants.

267. As a regular part of their "enterprise" of Defendants, repeatedly and far more times than two, committed predicate acts that violated 8 U.S.C. 1324(a)(1)(A)(iii), by "knowing or in reckless disregard of the fact that an alien had come to, entered or remains in the United States in violation of law, conceal[ed], harbor[ed] or shield[ed] from detection, or attempt[ed] to conceal, harbor or shield from detection, such aliens" in employment and in the buildings in which they worked at the "Montgomery processing facilities", by allowing known and suspected undocumented workers to use, in their illegal employment, names and Social Security numbers that were not theirs to use, paying known and suspected undocumented workers on payroll under names and social security numbers that were not theirs to use, allowing known undocumented workers to become and remain in employment without requiring them to establish or timely establish their eligibility for employment in the United States, all, separately and together, as part of the steps, artifices and schemes Defendants' enterprise used in violation of "8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime to 'conceal[], harbor[], or

shield from detection' aliens that have illegally entered the United States."
Williams v. Mohawk Indus., Inc., 465 F. 3d 1277, 1283 (11th Cir. 2006) (*per curiam*).

268.  By knowingly accepting questionable or obviously fraudulent documentation, Defendants allowed undocumented workers to hide their true names and use names and Social Security numbers that were not theirs to use, helped undocumented workers go undetected by federal authorities.

269.  Defendants violated 8 U.S.C. 1324(a)(1)(A)(iv), by "encourag[ing] or induc[ing] an alien to ... reside in the United States, knowing or in reckless disregard of the fact that that such coming to, entry, or residence is or will be in violation of law," by allowing known and suspected undocumented workers to use, in their illegal employment, names and Social Security numbers that were not theirs to use, to become and remain in employment without requiring them to establish or timely establish their eligibility for employment in the United States, preferring to employ, and so employing undocumented workers over American citizens who are lawfully and eligible to work in the United States, all, separately and together, as part of the elaborate steps and artifices and schemes Defendants used in violation of "8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a federal crime to 'encourage[] or induce[] an alien to ... reside in the United States, knowing or in reckless disregard of the fact that such ...

residence is or will be in violation of the law.' " Id. Defendants actions provided undocumented workers with employment in the United States encourages and induces them to reside here.

270. Defendants violated 8 U.S.C. 1324(a)(1)(A)(v)(I)-(II), by engaging in conspiracies to commit, and aiding and abetting others to commit, the preceding violations described in subparagraphs (a)-(b) above, and committing the overt acts described above in furtherance of such crimes.

271. The activities described herein affect and affected interstate commerce.

272. As of the termination of Plaintiff Fuller's employment with Koch-Ala, the conduct of the "enterprise" (described above) included years-long, and were an ongoing continuing, pattern, as a regular part of business, racketeering activity in violation of RICO, 18 U.S.C. § 1961(1)(F), in that Defendants and their "enterprises" repeatedly violated and continued to violate "8 U.S.C. § 1324(a)(3)(A), which makes it a federal crime to 'knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens' during a twelve month period," Id.

273. Under the management and oversight of Defendants far more than two of the predicate acts described above were part of the pattern of racketeering conduct in Defendants' "enterprise" described above.

274. At the time Plaintiff Fuller's employment ended with Koch-Ala, the conduct

unlawful under RICO as described herein was ongoing, known to Defendant, had been going on for several years, and affected interstate commerce.

275. Absent intervention of this Court, Defendants and their enterprise will continue to engage in such ongoing violations of RICO.

276. The above-described illegal predicate acts regarding employment of undocumented workers had the purpose of and directly resulted in depriving Plaintiff and other lawfully employed individuals "business relations unhampered by schemes prohibited by the RICO predicate statutes." Williams, 465 F. 3d at 1289.

277. Plaintiff Fuller suffered direct injury to his business interests that was proximately and directly caused by the substantive RICO violations of Defendants and their "enterprise," which deprived Plaintiff "business relations unhampered by schemes prohibited by the RICO predicate statutes." Id.

278. Defendant terminated Plaintiff's employment due to his objection to Defendants' actions that constituted RICO violations.

279. The RICO violations were a proximate and direct cause of Plaintiff's discharge from employment with Defendant Koch-Ala.

WHEREFORE, Plaintiff demands judgment, separately and severally, against Defendants Koch, Koch-Ala and Birchfield for relief including:

37

a.     declaratory judgment that Defendants, by and through their enterprise, are engaging, and have been engaged, in a pattern of racketeering conduct in violations of RICO as alleged in this Count,

b.     an injunction prohibiting Defendants, their agents and anyone acting in concert with them, from engaging in an enterprise that commits further violations of RICO as described in this Count;

c.     back pay and benefits

d     reinstatement or, in the alternative in lieu of reinstatement, front pay and benefits,

e.     compensatory and punitive damages in amounts to be determined by the jury;

f.     an award of treble of all damages, back pay and benefits, front pay and benefits awarded,

g.     Plaintiff's reasonable attorneys' fees and expenses, plus costs; and

h.     any further relief deemed appropriate by the Court.

COUNT X
RICO
VIOLATIONS OF 8 U.S.C. 1324(a)(1)(A)(iv)
(Harvey Fuller)

280.   Plaintiff Fuller reasserts all allegations above.

281.   As alleged above, Defendants violated 8 U.S.C. 1324(a)(1)(A)(iii).

WHEREFORE, Plaintiff Fuller demands judgment, separately and severally, against

Defendants Koch, Koch-Ala and Burchfield for relief including:

a.      declaratory judgment that Defendants, by and through their enterprise, are engaging, and have been engaged, in a pattern of racketeering conduct in violations of RICO as alleged in this Count,

b.      an injunction prohibiting Defendants, their agents and anyone acting in concert with them, from engaging in an enterprise that commits further violations of RICO as described in this Count;

c.      back pay and benefits

d       reinstatement or, in the alternative in lieu of reinstatement, front pay and benefits,

e.      compensatory and punitive damages in amounts to be determined by the jury;

f.      an award of treble of all damages, back pay and benefits, front pay and benefits awarded,

g.      Plaintiff's reasonable attorneys' fees and expenses, plus costs; and

h.      any further relief deemed appropriate by the Court.

COUNT XI
RICO
VIOLATIONS OF 8 U.S.C. 1324(a)(1)(A)(v)(I)-(II)
(Harvey Fuller)

282.   Plaintiff Fuller reasserts all allegations above.

283.   By their conduct, alleged above, Defendants violated 8 U.S.C. §

39

1324(a)(1)(A)(v)(I)-(II), by conspiring to commit, and aiding and abetting, the above-described violations of RICO.

WHEREFORE, Plaintiff demands judgment, separately and severally, against Defendants Koch, Koch-Ala and Burchfield for relief including:

      a.      declaratory judgment that Defendants, by and through their enterprise, are engaging, and have been engaged, in a pattern of racketeering conduct in violations of RICO as alleged in this Count,

      b.      an injunction prohibiting Defendants, their agents and anyone acting in concert with them, from engaging in an enterprise that commits further violations of RICO as described in this Count;

      c.      back pay and benefits

      d      reinstatement or, in the alternative in lieu of reinstatement, front pay and benefits,

      e.      compensatory and punitive damages in amounts to be determined by the jury;

      f.      an award of treble of all damages, back pay and benefits, front pay and benefits awarded,

      g.      Plaintiff's reasonable attorneys' fees and expenses, plus costs; and

      h.      any further relief deemed appropriate by the Court.

**PLAINTIFFS REQUEST A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Heather Newsom Leonard
Attorney Code - ASB-1152-061H
ATTORNEY FOR PLAINTIFFS

OF COUNSEL:

HEATHER LEONARD, P.C.
P.O. Box 43768
Birmingham, AL 35243
Phone:        (205) 977-5421
Facsimile:   (205) 278-1400
E-mail:       Heather@HeatherLeonardPC.Com

PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:

Koch Foods of Alabama, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Koch Foods, Inc.
c/o Joseph Grendys
Chief Executive Officer
Koch Foods
1300 West Higgins Road
Park Ridge, IL 60068

David Birchfield
614 River Birch Drive
Prattville, AL 36067

Melissa McDickinson
614 River Birch Drive
Prattville, AL 36067