IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KA'TORIA GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-595-RAH |
| | ) | [WO] |
| KOCH FOODS, INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

After five years of contentious and bitter litigation, this case was finally put before a jury in the Middle District of Alabama. Plaintiff Ka'Toria Gray won her case, although not on all of the counts asserted in the Complaint and not for the amount of monetary damages she requested from the jury. Now, Gray seeks a new trial. For the reasons outlined below, Gray's motion for a new trial (Doc. 513) is due to be DENIED.

## I.      BACKGROUND

A two-week jury trial was held in this case in early 2022. The trial centered on alleged inappropriate conduct by two employees at Koch Foods of Alabama LLC, with bias and credibility issues associated with virtually every witness who testified. Specifically, Gray alleged that while she was a nurse at Koch Foods of Alabama LLC in 2015 and 2016, she was sexually harassed and assaulted by David Birchfield

and Melissa McDickinson, both of whom were employed in the Human Resources Department. She also alleged that Koch Foods of Alabama LLC and its parent company Koch Foods, Inc. (collectively, Ala-Koch) failed to prevent this harassment.  Gray brought claims for assault and battery, invasion of privacy, outrage, negligent/wanton training, supervision and retention, and hostile work environment sexual harassment under Title VII.[1]

After two weeks of contentious objections, testimony, and evidence, and after requesting the jury award her over $10 Million in damages, the case was submitted to the jury. The jury deliberated for several hours before reaching its verdict.   In its verdict, the jury found in favor of Gray and against Birchfield and McDickinson for assault and battery. On that claim, the jury awarded Gray $50,000 assessed equally between each individual defendant. The jury however found in favor of McDickinson, Birchfield, and Ala-Koch on all other claims.  Notably, the jury found against Gray on her Title VII claim against Ala-Koch, thereby depriving her of the ability to recover attorneys' fees.[2]

Now, despite a favorable verdict in part, Gray challenges the validity of the verdict on a bevy of grounds, ranging from events on the first day of trial to the last,

---

[1] Gray also brought claims for retaliation but those were dismissed in the Court's prior summary judgment order. (Doc. 415.)

[2] And the attorneys' fees claim in this five-year long case could have been astronomical. One need look no further than the 500-plus docket entries in the record.

including challenges alleging an inconsistent verdict, a verdict against the great weight of the evidence, improper evidentiary rulings, improper jury instructions, and improper rulings made during jury selection.

## II.   <u>LEGAL STANDARD</u>

Following a jury trial, a district court "may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Such reasons can include that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis v. Am. Home Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)) (alteration in original). "Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial if in the court's opinion, the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Id.* (cleaned up). *See also Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186, 1189 (11th Cir. 2001) ("[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.").

The rule does not however "grant a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact." *Ard v. Southwest Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988).  Rather, it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence.  *Watts v. Great Atlantic and Pacific Tea Co., Inc*., 842 F.2d 307, 310 (11th Cir. 1988). Further, a court may grant a motion for new trial if the court believes that important evidence was improperly excluded. *See Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504 (11th Cir. 1985).

### III.   DISCUSSION

Gray moves for a new trial on four primary grounds: (1) the verdicts on the Title VII hostile work environment and negligent/wanton supervision claims were against the great weight of the evidence and were inconsistent with the verdicts on the assault and battery claims, (2) the Court gave three erroneous jury instructions, (3) the Court improperly excluded certain extrinsic evidence, and (4) the Court improperly denied strikes for cause during jury selection. None of these warrant a new trial.

### A. The Title VII Claim

Much of Gray's motion rests on the argument that "the jury's finding that Birchfield and McDickinson committed assault and battery of Plaintiff is inconsistent with its verdict on sexual harassment." (Doc. 513 at 4.) In essence, Gray

4

argues that because the jury found in her favor on the state law tort claims for assault and battery against Birchfield and McDickinson, the jury should have also found in her favor on the Title VII claim against Ala-Koch.  This argument is without merit.

The verdicts for the Title VII and assault and battery claims are not inconsistent because these claims have different elements, and the jury reached its verdict based on different facts related to these different elements. Specifically, the jury found that Gray was not harassed because of her sex, therefore defeating Gray's Title VII claim.  While discriminatory motive is an element to a Title VII claim, it is not an element to an assault and battery claim. For the assault and battery claim, the jury needed only to find that Gray had been subject to offensive or harmful intentional touching. *See Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190, 1194 (Ala. 1998). Thus, it was entirely consistent for the jury to conclude that Gray was assaulted and battered and also to conclude that Gray was not assaulted and battered (or harassed) *because of* a discriminatory motive.

Furthermore, these determinations were not against the great weight of the evidence because Gray had the burden of proving that she was subject to severe or pervasive conduct because of her sex, an issue that was contested by the Defendants. And the evidence that was introduced by Gray was subject to credibility and bias attacks, as was the case with virtually every witness who testified at trial.  In other words, the jury in this case was faced with determining what evidence to believe or

disbelieve, and it certainly was within the jury's role to disbelieve much of what Gray presented as it concerned her Title VII claim.

In short, the verdict was not inconsistent, and the verdict in favor of Ala-Koch on the Title VII claim was entirely consistent with the evidence presented and the arguments made by counsel at trial, just as it would have been had the jury found in Gray's favor on the Title VII claim.

**B.** __The Negligent/Wanton Supervision, Training and Retention Claim__

Gray also challenges the jury's conclusion that Ala-Koch, through Birchfield, did not negligently or wantonly supervise, train or retain McDickinson.

Specifically, Gray argues that the evidence showed that Birchfield, acting as an Ala-Koch agent, actively witnessed McDickinson assault Gray and did nothing to stop it. Instead, he joined in on the assault. Gray asserts that this evidence is sufficient to establish a claim of negligent/wanton supervision, training or retention and is inconsistent with the jury's conclusion that McDickinson was guilty of assault and battery.

It is true that the jury could have viewed this as evidence of negligent/wanton supervision, training and retention of McDickinson. But the jury was also presented with evidence that there was no negligence or wantonness, and that the events of the evening in question were not work-related and were outside the line and scope of their respective employments with Ala-Koch. In other words, the jury easily could

6

have concluded that the events of that evening had nothing to do with Ala-Koch or the individual parties' respective employment there.

Simply put, the jury's conclusion that Ala-Koch did not negligently supervise, train or retain McDickinson was not against the great weight of the evidence or inconsistent with the jury's other findings.

## C. Challenged Jury Instructions

Gray takes issue with three of the Court's jury instructions: (1) an adverse inference instruction relating to a spoliation finding; (2) a special interrogatory concerning a contributory negligence defense; and (3) the Court's statement during the end of the trial that the case was coming to an end. None of these instructions or statements prejudiced Gray, and none warrant a new trial.

First, the Court addressed the spoliation issue at length during trial and in a prior order. The Court found that an adverse inference instruction was warranted. The Court stands by those findings. But to state it again, McDickinson and Birchfield were instructed to preserve evidence (that is, their devices and their data), undertook no effort to preserve their devices or their data, traded-in their devices, and then allowed the data to be deleted, which they contended occurred due to an "inadvertent" factory-reset and not due to an intentional deletion on their part. From this Court's observation, Birchfield and McDickinson's claim of inadvertence simply was not credible.

Second, the contributory negligence charge that was given, and the accompanying special interrogatory on the Verdict Form regarding contributory negligence, did not prejudice Gray because the jury was simply given a special interrogatory to answer as to whether or not there was contributory negligence. The jury was not instructed to consider contributory negligence as a means of determining whether Ala-Koch was negligent. Instead, the jury was instructed to answer that special interrogatory and then to continue to complete the Verdict Form regardless of whether the answer was "Yes" or "No" to the contributory negligence question. The instruction and interrogatory had no bearing on the outcome of the claim even if it was answered affirmatively. And in any event, the charge did not mislead the jury because the jury found that Ala-Koch was not negligent and therefore never reached the question of whether Gray was contributorily negligent. In short, the charge created no error. *See Bank S. Leasing, Inc. v. Williams*, 778 F.2d 704, 707 n.2 (11th Cir. 1985) ("We find it unnecessary to reach the issue of whether the judge's supplementary written instruction to the jury concerning estoppel was error since the jury never reached the issue.").

Third, Gray challenges the sufficiency of the Court's instruction to the jury that they should review and consider all the evidence in the case. Specifically, Gray contends that this instruction was undermined by a comment made by the Court during the last few days of the trial to the effect that the trial was coming to an end

and would be concluded within the next few days. Gray's argument that this somehow compelled the jury to hasten its deliberations or ignore evidence is disingenuous and not supported by any evidence whatsoever. In fact, the jury deliberated and found in Gray's favor on two of her claims and against her on others — a verdict that evidences the jury's calculated deliberative process.

In short, none of the instructions given to the jury merits a new trial.

### D. **Challenged Evidentiary Rulings**

Gray dedicates over ten pages of her motion to arguing that the Court committed plain error when it excluded certain nude photographs of Birchfield and McDickinson with other consenting adults (but not Gray).

Gray generally sought admission of all of these photographs, over the Defendants' objections, on the grounds that the photographs were relevant to whether Birchfield and McDickinson were engaged in a romantic or sexual relationship, a fact put in dispute by Birchfield and McDickinson, themselves, at trial both by the opening statement of their legal counsel and their trial testimony. Gray also sought admission of these photographs to impeach Birchfield and McDickinson and to attack their credibility and bias.

To begin, the Court stands by its previous rulings. Birchfield and McDickinson's relationship status was a relevant fact and issue at trial, as it went to issues such a motive to conceal and lie, credibility, bias, impeachment, and rebuttal.

Indeed, an overriding issue during the entire case was not only the denial of any type of sexual relationship between Birchfield and McDickinson, but an assertion that Gray was lying about the November garage incident because, not only did Birchfield and McDickinson not jointly proposition her for group sex, but that Birchfield was not even in the same city at the time of the assault. Evidence of the extent and type of their relationship was relevant to their credibility on this point. And further, the existence of this relationship supported numerous assertions about the motive to lie and to cover up to Ala-Koch to protect their jobs.  As such, testimonial evidence and *some* physical evidence was permitted on the issue of their relationship. Gray's gripe is that she was not permitted to admit and show *all* the photographs she had obtained in discovery, and in particular, all of the photographs of Birchfield and McDickinson in various states of undress with each other and with other individuals.

For multiple reasons, the Court excluded the referenced photographs.  For example, while having some degree of relevancy to certain issues, the photographs had a limited probative value as to whether Gray was harassed or assaulted on November 14, 2015, as none of the photographs depicted any of the events of that evening.  While the Court gave Gray some leeway into delving into unrelated personal trips, vacations, and fraternizations between McDickinson, Birchfield and certain key witnesses presented by the parties, admission of *all* of the photographs only diverted attention from the primary issues in the case and ran the risk of

confusing the jury. *United States v. Frank,* No. 04-20778-CR, 2006 WL 8434880, at *3 (S.D. Fla. Nov. 16, 2006) (excluding naked photos of defendant with consenting adults where the case was about whether the defendant had sexual relations with minors).   Also, nude photographs can be, and usually are, inflammatory and prejudicial. *See United States v. Smith,* 459 F.3d 1276, 1295 (11th Cir. 2006) (discussing how nude photos of a defendant with non-parties can "inflame the jurors' emotions and prevent[] a level-headed evaluation of all the evidence.").

More importantly, by the time Gray sought admission of the photographs, there had already been days of testimony from several witnesses, including the taker of the challenged photographs, confirming that Birchfield and McDickinson were involved in a romantic and/or sexual relationship. The jury had also already seen other photographs confirming that Birchfield and McDickinson were in some sort of nonwork-related relationship. As such, the photographs would not only have been confusing but also would have been needlessly cumulative and repetitive.

Weighing all of this against the limited probative value of the photographs, the Court concluded that the photographs should not be admitted. The Court sees no reason to depart from that conclusion now.

### E.  Challenged Jury Selection Rulings

Finally, Gray moves for a new trial based on rejected for-cause challenges during jury selection. As with the rest of Gray's arguments, this argument also summarily fails.

During jury selection, Gray moved to strike Jurors 42, 49, and 53 for cause. In all three instances, the Court denied the challenges, largely because the jurors confirmed that they could serve as an impartial juror and follow the facts and law. "In determining whether a juror is impartial, '[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Brown v. Dep't of Corr.,* 348 F. App'x 526, 527–28 (11th Cir. 2009) (quoting *Irvin v. Dowd*, 366 U.S. 717 (1961)). Further, none of the challenged individuals had "such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993), as modified (Sept. 30, 1993), *aff'd* 218 F.3d (11th Cir. 2000).

Of course, Gray could have used her peremptory strikes to remove veniremembers 49 and 53, but she never had to do so because the jury was selected before the parties were required to consider and strike them if necessary. Therefore, as to those two venire members, Gray's claimed error is meaningless and harmless.

Gray did however use a peremptory strike on number 42 and therefore that veniremember was not seated on the jury. Since that individual, and the other two, was not seated, any ruling on the motion to strike for cause was harmless, especially

since Gray makes no allegation that any of the seated jurors were biased. *See United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (holding that, in the criminal context, a party's rights are not impaired "when [that party] chooses to use a peremptory challenge to remove a juror who should have been excused for cause."). Regardless, the Court stands by its determination that the three veniremembers at issue should not have been struck for cause.

## IV.   CONCLUSION

At trial, Gray caught a fish—Birchfield and McDickinson. But she thinks the big fish—Ala-Koch—got away. Now, by bringing this motion, Gray is attempting to throw her catch back in the pond and cast another line in the hopes of bringing in a whale. Unfortunately, Gray is all out of line.

Accordingly, for the reasons stated above, during the trial in this matter, and in previous orders issued by this Court, Plaintiff Ka'Toria Gray's *Motion for a New Trial* (Doc. 513) is due to be and is hereby DENIED.

DONE, this the 28th day of July 2022.

_____ /s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE